O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HELEN VILLA, ) | Case No. CV 07-6618-MLG |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the ) | |
| Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**I.  Factual and Procedural Background**

This is an action for judicial review of the Commissioner's final decision denying Plaintiff Helen Villa's application for disability insurance benefits and supplemental security income benefits 42 U.S.C. §§ 416(i), 423. Plaintiff was born on November 30, 1954. (Administrative Record ("AR") 60.) She has worked as a head cashier, banker, customer service representative, and cashier. (AR 20.) She alleges disability due to pain in her knees, back and left hand. Plaintiff's disability insurance coverage extends through March 31, 2009. (AR 15.)

//

//

Plaintiff filed an application for a period of disability and disability insurance benefits, alleging the onset of disability on September 4, 2003. (AR 60-65.) Here applications were denied at the initial stage of review and upon reconsideration. (AR 46-50, 53-57.)

On April 3, 2007, ALJ Keith Dietterle held an administrative hearing at which Plaintiff and a vocational expert testified. (AR 299-324.) The ALJ issued his decision denying benefits on May 25, 2007. (AR 12.) The ALJ found that Plaintiff has severe impairments of bilateral knee chondromalacia (softening of the joint cartilage), status post arthroscopic joint debridement, and left middle finger stenosing tenosynovitis (inflammatory narrowing of the tendon sheath).[1] (AR 17.) The ALJ concluded, however, that Plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for six hours in an eight hour day, sit six hours in an eight hour day, with appropriate breaks, and continuously grasp and perform fine manipulation with the right upper extremity, but that she is limited to frequent grasping/fine manipulation with the upper left extremity. (AR 17-18.) The ALJ then found that Plaintiff's RFC allowed her to perform her past relevant work as a head cashier, banker, customer service representative, or cashier. (AR 20.) Because the ALJ found that Plaintiff could perform her past relevant work, he found that she was not under a disability as defined by the Social Security Act. (AR 20.) The Appeals Council denied Plaintiff's request for review. (AR 7-9.)

Plaintiff initiated this action on October 11, 2007. There are two issues before the Court: (1) whether the ALJ properly evaluated

---

[1] Plaintiff described this as a "trigger finger" during the hearing before the ALJ. (AR 315.)

Plaintiff's testimony regarding her pain and functional limitations, and (2) whether the ALJ properly evaluated Plaintiff's residual functional capacity ("RFC") based on all of her impairments.

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)(quoting *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999)). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion and Analysis**

Plaintiff contends that the ALJ erred in finding that her impairments were not reasonably capable of producing the pain symptoms that she alleged. (Joint Stipulation ("JS") 3.) At the hearing,

Plaintiff maintained that she was forced to stop working in 2003 due to pain. (AR 19, 308.) Plaintiff testified that she could sit comfortably for up to about 20 minutes, stand comfortably for about 15 minutes, and comfortably walk one-half of one block. (AR 312.) She also testified that she keeps her legs elevated most of the day to alleviate pain and that she could not lift more than 10 pounds.[2] (AR 316-17.)

The ALJ rejected Plaintiff's testimony of disabling pain, finding that Plaintiff's medically determinable impairments could not reasonably be expected to produce the symptoms of pain she described. (AR 19.) The ALJ explained:

> [H]er radiographs showed only mild findings. Her physical exam revealed no gait abnormalities. Her hand x-rays were normal. The claimant has not required extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic, or other extensive or significant forms of treatment commonly prescribed for intense pain. The claimant has no abnormalities of gait, nor are any assistive devices required. While the claimant asserted a chronic and debilitating pain syndrome of extended duration, it is noted she exhibited no evidence of diffuse atrophy or muscle wasting, common indicators of chronic pain. At the hearing, the claimant's thoughts did not seem to wander and all questions were answered alertly and appropriately. There is no credible evidence of usage of strong medication to alleviate pain that would significantly impair the claimant's

---

[2] The vocational expert testified that an individual who has to keep their legs elevated at will would be unable to perform any work. (AR 322.)

1    ability to do basic work activities. There was no evidence in
2    the medical record of any significant side effects.
3  (AR 20.) Although the ALJ found Plaintiff to be sincere, he did not find
4  her "fully credible regarding the extent, intensity and duration of the
5  alleged   subjective   symptoms   and   functional   limitations   and
6  restrictions." (AR 20.)

7       "The ALJ must provide 'clear and convincing' reasons to reject a
8  claimant's subjective testimony, by specifically identifying 'what
9  testimony is not credible and what evidence undermines the claimant's
10 complaints.'"[3] *Parra*, 481 F.3d at 750 (quoting *Lester v. Chater*, 81 F.3d
11 821, 834 (9th Cir. 1995)). In other words, to properly reject
12 Plaintiff's subjective complaints, "the ALJ 'must provide specific,
13 cogent reasons for the disbelief.'" *Greger v. Barnhart*, 464 F.3d 968,
14 972 (9th Cir. 2006)(quoting *Lester*, 81 F.3d at 834).

15      When the claimant produces medical evidence of "an underlying
16 impairment which is reasonably likely to be the cause of the alleged
17 pain," medical findings need not support the claimed severity of the
18 pain, and "the adjudicator may not discredit the claimant's allegations
19 of the severity of pain solely on the ground that the allegations are
20 unsupported by objective medical evidence." *Bunnell v. Sullivan*, 947
21 F.2d 341, 343 (9th Cir. 1991)(en banc). Further, the ALJ's reasons must
22 be "properly supported by the record." *Id*. at 345; *Doanne v. Astrue*,
23 2008 WL 2242450, at *2 (W.D. Wash.)(unpublished op.).

24      The ALJ's finding regarding Plaintiff's pain symptoms is
25 inconsistent with much of the evidence in the record. Plaintiff
26 underwent arthroscopic surgery on both of her knees in September 2003.

---

[3] The ALJ did not find that Plaintiff was malingering. The law relevant to that question is accordingly irrelevant here.

(AR 98-99.) While many of Plaintiff's medical charts are marked with an illegible scrawl characteristic of the medical profession, a doctor clearly noted on April 27, 2004, that Plaintiff had "a lot of pain" in her right knee. (AR 106.) On June 23, 2005, Plaintiff reported constant throbbing bilateral knee pain that worsens with physical exertion such as standing, walking, bending and lifting. (AR 132.) She was also observed to have "painful crepitation in both knees."[4] (AR 135.) A chart from July 6, 2005 noted Plaintiff's complaints of pain in her knees and hands. (AR 143.) A chart from September 12, 2005 also noted crepitation in both knees. (AR 144.) Plaintiff has undergone rounds of cortisone injections in both knees. (AR 226, 239, 251, 284.) A progress note from November 21, 2006 found that Plaintiff's knees had not improved after a cortisone injection and that a range of motion test revealed severe crepitation. (AR 297.) Plaintiff's knee impairment was so severe that she was scheduled for a total right knee replacement in June 2007. (AR 295.)  Plaintiff was also prescribed Naproxyn (a non-steroidal anti-inflammatory prescription drug) and prescription-strength ibuprofen for her pain. (AR 284-85, 313.)

In light of Plaintiff's extensive history of knee pain, including the symptom of bone scraping on bone, her prior arthroscopic surgery, her scheduled knee replacement, her record of frequent steroid injections, and her use of non-steroid prescription anti-inflammatory

---

[4] Crepitation is defined as "a sound like that made by rubbing the hair between the fingers, or like that of throwing fine salt into a fire" or "the noise made by rubbing together the ends of a fractured bone." Dorland's Illustrated Medical Dictionary 397 (27th ed. 1988)("Dorland's"). The "fractured bone" definition of crepitation is consistent with findings in the report on Plaintiff's knee operation that "to remove all the fraying tissue would require taking to raw bone..." (AR 98.)

drugs, the ALJ's finding was not properly supported by substantial evidence in the record as a whole.[5] *Bunnell*, 947 F.2d at 345. This is not a determination that all of Plaintiff's subjective complaints must be credited and that she must be found disabled. The Court will not substitute its own judgment on credibility for the judgment of the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)("[T]he ALJ, who holds a hearing in the Commissioner's stead, is responsible for determining credibility and resolving conflicts in medical testimony.").

## IV. Conclusion

In light of the inconsistency between the record as a whole and the ALJ's findings regarding Plaintiff's subjective complaints and for the reasons stated above, the case is remanded for further proceedings consistent with this opinion.[6]

DATED: August 11, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[5] Moreover, it is not clear to the Court that the treatment and clinical findings that the ALJ found lacking in this record, i.e., "extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic" as well as the absence of "diffuse atrophy or muscle wasting" are typical of knee pain, as opposed to back pain. This observation should also be addressed by the ALJ on remand.

[6] Plaintiff also raises the issue of whether the ALJ improperly failed to find Plaintiff's spine impairment to be severe. Plaintiff has failed to demonstrate that her spine impairment – which she admitted only causes intermittent pain, pain that is often controlled with medication – affected her ability to work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)("The mere existence of an impairment is not proof of a disability.").